*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. C. SHERMAN, Minor.

UNPUBLISHED
January 13, 2026
2:54 PM

No. 372689
Wayne Circuit Court
Family Division
LC No. 2024-001085-NA

Before: BOONSTRA, P.J., and O'BRIEN and YOUNG, JJ.

PER CURIAM.

Respondent appeals as on leave granted[1] the order terminating his parental rights to the minor child, JCS, under MCL 712A.19b(3)(b)(*i*) (parent abused the child or a sibling), (j) (reasonable likelihood of harm if returned to parent), (k)(*ii*) (criminal sexual conduct involving penetration or attempted penetration), and (k)(*ix*) (sexual abuse of a child). We affirm.

## I. BACKGROUND

In April 2024, Children's Protective Services (CPS) received a complaint alleging that respondent physically and sexually abused JCS, who was 13 years old at the time. During a forensic interview that month, JCS disclosed that respondent regularly beat him. JCS reported that, on one occasion, respondent gave him a choice of punishments between respondent's "hand, a belt, or if he wanted to be licked." After JCS did not answer, respondent performed oral sex on JCS's anus. In light of significant concerns about the safety and well-being of JCS, petitioner, the

---

[1] Respondent initially filed a claim of appeal with respect to an order that was not appealable by right, resulting in a defect in this Court's jurisdiction. Because respondent's sole claim of error concerns a later order terminating his parental rights, for which an appeal as of right was available under MCR 3.993(A)(3), we exercise our discretion to treat respondent's claim of appeal as an application and grant leave.

Department of Health and Human Services (DHHS), filed a petition to terminate respondent's parental rights at the initial disposition.

On the date and time scheduled for a bench trial, November 14, 2024, respondent pleaded no contest to the jurisdictional grounds and statutory grounds for termination pursuant to the DHHS investigative report. At the best-interest portion of the termination hearing, JCS's mother testified that JCS was hospitalized four separate times since the incident that gave rise to the initial CPS investigation report. According to her, JCS was diagnosed with post-traumatic stress disorder (PTSD) during one of these visits "[b]ecause he kept going back. He was having a lot of nightmares and at first he wasn't feeling safe any where [sic]." She added that "he would not go to sleep, because . . . he was scared. When he was in the hospital, he was always looking around for his dad before he had went to sleep."

JCS, for his part, testified that, since moving in with his mother and grandmother, he felt better about the prospect of not seeing his father. When asked whether he wanted to have contact with respondent, JCS said, "No, not really." JCS was then asked whether he would feel safe if the court were to allow him to see respondent. JCS was unequivocal: "No. I'd probably be like worried, probably a little nervous, probably scared. I don't know. I wouldn't know what to expect from him."

The referee recommended that termination of respondent's parental rights would be in the best interests of JCS, explaining:

> I think it is an egregious case based on what I've read, not just the sexual part. But that's the maintain [sic] thing, but also the accompanying physical abuse as well and giving your 14 or 13 year old child alcohol and weed gummies is probably I would say not a good idea to do.

> But that in and of itself is not enough. But combined with everything, the Court looks at whether the preponderance of the evidence that there's enough there to terminate and has to look at the best interest of the child and focus on the child.

> So the Court does find that it is in the best interest of the child to terminate. Being hospitalized four times, I can tell has affected the child greatly, him being diagnosed with PTSD, just the way in which he testified. He testified very articulate[ly].

> \* \* \*

> But either way, the Court feels that it is in the best interest of the child to terminate based on the facts before me and the law as it is written.

> So the Court is going to terminate and release the child to the care and custody of his mom.

> \* \* \*

The Court did consider the age of the child and considered his wishes and even though being placed with a relative weighs against termination, I think in the grand scheme of things, it's not enough to tip the scales back towards—more likely—back towards less than preponderance of the evidence.

So I wanted to put that on the record that the Court did consider placement with a relative. But ultimately decides that it's in the best interest of the child to terminate.

The referee also noted in the order following the hearing that termination was in JCS's best interests in light of his wishes and need for permanency, stability, and finality. The trial court ultimately adopted the referee's recommendation and terminated respondent's parental rights.

## II. ANALYSIS

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proven by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020). Based on his plea, the trial court found statutory grounds existed to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (j), (k)(*ii*), and (k)(*ix*). Respondent does not challenge the statutory grounds for termination. Respondent instead only argues that the trial court clearly erred by ordering the termination of his parental rights because termination was not in JCS's best interests. Specifically, respondent argues that the trial court did not adequately and reasonably consider the bond between JCS and respondent or the fact that JCS was placed with his mother. We disagree.

Once a trial court has found that there are statutory grounds to terminate parental rights under MCL 712A.19b(3), the court must terminate the parent's parental rights if it is in the children's best interests. MCL 712A.19b(5); *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews "for clear error the trial court's determination of best interests." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333; 985 NW2d 912 (2022).

"The trial court should weigh all the evidence available to determine the [child's] best interests." *In re White*, 303 Mich App at 713. When weighing the available evidence to determine the best interests of the child, the focus should be on the child, rather than the parent. *In re Moss*, 301 Mich App at 87. Factors that a court may consider include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. The child's bond with the parent is only one factor that a trial

court may consider when deciding whether termination is in a child's best interests, and it does not necessarily outweigh other factors. *Id.*

However, because "a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a)," the fact that a child is living with relatives when the case proceeds to termination is a factor that *must* be considered in determining whether termination is in the child's best interests. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). The failure to explicitly address relative placement renders the factual record inadequate to make a best-interest determination and requires reversal. *In re Olive/Metts*, 297 Mich App at 43. "Relative," as defined by MCL 712A.13a(1)(j)(*i*), has been interpreted to include biological parents. *In re Boshell/Shelton*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371973); slip op at 10.

Respondent argues that the trial court clearly erred in terminating his parental rights because it failed to consider JCS's placement with his mother. However, the trial court did explicitly consider JCS's relative placement when making its best interests determination. The trial court stated, "So I wanted to put that on the record that the Court did consider placement with a relative. But ultimately decides that it's in the best interest of the child to terminate." Thus, the trial court did not clearly err by concluding that, despite JCS's placement with his mother, termination of respondent's parental rights was in the best interests of JCS.

Finally, respondent argues that the trial court clearly erred in finding that termination was in JCS's best interests because the trial court failed to adequately and reasonably consider the bond between JCS and respondent. Again, respondent is mistaken. In making its best-interests determination, the trial court acknowledged the testimony of JCS, who stated that he felt better not seeing respondent, he did not want to have contact with respondent, and he was trying to move forward and could do that better if he did not have contact with respondent. The trial court further acknowledged JCS's testimony that respondent would "whoop" JCS for no reason and sexually abused him by licking his anus, which caused JCS to feel scared and weird. The trial court stated that as a result of this abuse, JCS had seen multiple therapists, was diagnosed with PTSD, and was hospitalized four times. Thus, the trial court clearly considered respondent's relationship with JCS based on JCS's testimony, which demonstrated that JCS had no interest in maintaining any sort of bond with respondent. The trial court did not clearly err in finding that termination of respondent's parental rights was in JCS's best interests due to JCS's need for safety.

Affirmed.

/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien
/s/ Adrienne N. Young